OPINION of the Court, by
Ch. J. Boyle.
This is a COpjtroversy for land, and turns exclusively upon the validity of the following entry, to .wit:
“ December 30th, 1732 — Benjamin Nctherland and Lev1 Todd, assignees of Andrew Crockett, enter 6000 acres of land on part of a treasury warrant, No. 10,647; beginning at the most westwardly corner of Thomas M’Clanahan's land, at the Clover Bottom ; thence bind-0,1 sa''l M’Clanahan’s N. W. N. and N. E. lines, as far as his most eastwardly corner; thence N. E.toEd-murid Hawkins’s entry ; thence binding on said Haw-kim’s en!lF on the S. \⅝ . am! thence on the N. W. to his northerly corner ; thence N. 70 W. and also from the beginning N. 70 W. a distance sufficient to include pj|e quantity by running the last line at right angles with the two last mentioned/’
Prior to the date, of this entry Thomas M’CIanahan j(a(] ma(le an entry upon a pre-emption warrant of 400 acr-es, calling to lie “ three miles from Kentucky, on Haggan’s trace, at a place called the Clover Bottom, at a |ree marked B. R.and two other entries upon trea-warrants of 500 acres each, one of which calls to adjoin his pre-emption on the south, and running south for quantity ; and the other calis to adjoin his N. E. corner at the Clover Bottom, and running up one of the brandies of Clear creek and extending out for quantity'.
Edmund Hawkins had, prior to the date cf the entry in contest, also made an entry of 600 acres, calling to lie “ on the waters of Clear creek, to begin half a mile on the south side of the Harrod’s road about sioc miles from the mouth of the Shawanee run, to extend half a mile below the trace, including bark camps and aspring about 200 yards below.”.
A trace is shewn in this case which is proven to have beer, well known prior to the date of M’Clanahan’s ea- *159 try ¡¡port the pre-emption warrant, as well by tlffiname of Haggan’s trace as by the names of the Shawanee run t race and of the trace from Harrodsburg to Lexington. And on that trace, about three miles from the mouth of Shawanee ran, there is delineated by the surveyor a place which is proven to have been known by the name of the Clover Bottom, in which there was a marked tree. The identity of the marked tree is not ascertained with perfect precision ; but the testimony, though hut circumstantial in relation to this point, ought perhaps to be considered as sufficient to justify a conclusion that the tree pointed out by the witnesses is the one intended by the locator. The pre-emption entry, therefore, may be assumed to be sufficiently established, and consequently the entries upon treasury warrants which depend upon it. Whether the call in the entry in question for “ beginning at the most westwardly corner of M’Clahahan’s land, at the Clover Bottom,” should be construed to relate to the whole tract covered by M’Clanahan’s three entries, or to that only which is contai ned in the preemption entry, is in some degree problematical. The, latter construction, however, ought perhaps to prevail, since the pre-emption entry calls for the Clover Bottom and the others do not. But be this as it may, it would not destroy the entry, were it liable to no other objection : for if the other objects called for occupied the position they arc contended to do, a survey made according to either construction would include some of the land in controversy, ami which woiud.be common to a survey made according to tlie other construction.
But in order to support the entry in question in this case, it is not only necessary that M’Clanahans’s entries should be established, but that of Hawkins also: for Hawkins’s entry is certainly a locative object, and must necessarily, according to its position in relation to the other locative objects called for, affect the survey to be made on the entry in question. Without, therefore, ascertaining its position, it is impossible to say whether any, and if any what part in certainty of the land in controversy would be included in a survey made in conformity to the call for Haw kins’s entry.
That Hawkins’s entry is not sufficiently established, there can be no doubt. The call for the bark camps is evidently locative; and the ascertainment of their position is as necessary, therefore, to support Hawkins’s *160 entry, as the ascertainment of tlie position of the lattef* is necessary to support the entry in question, But in relation to this point, the evidence in the cause is totally defective. Some of the witnesses indeed say that they had, prior to the date of Hawkins's entry, seen bark camps some where on the trace or road from iiarrods-burg to Lexington $ but they do not attempt to designate the place. The surveyor having marked a ¡dace lor bark camps on the connected plat, can upon no principle be received as evidence of their existence there at the date of the entry. Where a surveyor delineates and reports an object as at present existing, his report has been taken as. prima fade evidence of its existence and where the object is of a permanent or imperishable nature, its existence at a former period would be a necessary inference. But the report of the surveyor does riot in this case purport that bark camps exist at present at the place marked on the plat; and if it did, it would be irrational, from the perishable nature of the objects, to infer that they had existed there thirty years ago. It is clear, therefore, that this entry cannot be sustained, and consequently the entry in question depending on it must fail.
Decree affirmed, with costs.